IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| KARLA GERNER, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:10CV885–HEH |
| | ) |
| COUNTY OF CHESTERFIELD, VIRGINIA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
### (Defendant's Motion to Dismiss)

This is an action seeking damages under Title VII of the Civil Rights Act of 1984 for unlawful employment practices in connection with Plaintiff's termination as the Chesterfield County Director of Human Resource Management. The case is presently before the Court on a Motion to Dismiss filed by the Defendant, County of Chesterfield, Virginia ("the County"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Both parties have filed memoranda of law supporting their respective positions. The Court heard oral argument on February 10, 2011. For the reasons which follow, the Defendant's Motion to Dismiss will be granted.

In her Complaint, Plaintiff contends that after twenty-six years of service to Chesterfield County, her position as Director of Human Resource Management was eliminated as part of a budget-driven reorganization of personnel. On December 15, 2009, without prior notice, Plaintiff alleges that she was advised of this job action at a meeting with the County Administrator, County Attorney, and Deputy County

Administrator. After being informed that her position had been eliminated, the County Attorney offered Plaintiff an opportunity to sign a Separation Agreement (the "Agreement") which included a voluntary resignation. Under the terms of the Agreement, she would receive three months' severance pay and health insurance benefits. The Agreement, however, required Plaintiff to waive any and all causes of action she had or might have had against the County. After several days of consideration, she declined the offer.[1]

In her Complaint, Plaintiff does not take issue with the *bona fides* of the reorganization. Her grievance is styled in Count I as "Wrongful Termination – Disparate Treatment on the Basis of Sex, Violation of 42 U.S.C. § 2000e-2." The essence of her action is best captured by paragraph 26 of the Complaint, which reads:

> Other similarly situated male employees of the County were not subject to termination under the same conditions as that afforded Gerner. In particular, when the County sought to separate similarly situated male employees, they were provided with "sweetheart deals" that included continued employment, pay, and/or benefits, for up to 6 months or more. Moreover, other similarly situated male employees were not blindsided with their termination notices and were not escorted off the premises by police and security.

(Compl. ¶ 26.)

The core of Plaintiff's Complaint is that she received a less favorable severance package offer than male employees terminated from the County. Although the Complaint recites, in paragraph 23, the benefits received by four male directors who were

---

[1] Plaintiff also maintains that her e-mail and voicemail access were eliminated immediately following the meeting and that she was given only a few days to remove her personal items from her office under the supervision of security personnel.

purportedly terminated by the County, no additional details are provided. The Complaint does not indicate the circumstances under which these individuals were terminated, the time of such action, the County personnel involved in such decision, or the prevailing economic climate at the time.

The County challenges the sufficiency of Plaintiff's Complaint on two fronts. First, the County points out that Plaintiff's claim does not allege that she was terminated based on gender. Instead, it focuses on alleged disparate treatment in the manner of termination and the nature of severance benefits. The sequence of events, in the County's view, is critical to the analysis. The County argues that this is not a case where Plaintiff had a contractual entitlement to severance benefits. The Agreement was offered following Plaintiff's termination and not as a term or condition of separation. The severance package was, in essence, an act of munificence on the part of the County. Therefore, the County argues that the terms and conditions of the severance package do not constitute an actionable adverse employment action under 42 U.S.C. § 2000e-2.

To survive a motion to dismiss, a complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of NC v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Rule 8 of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim

3

showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

While Rule 8 does not require "detailed factual allegations," *Twombly* held that it does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964. Thus a complaint containing facts that are merely "consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Id.* at 557, 127 S. Ct. at 1966. A complaint achieves facial plausibility when it contains sufficient allegations supporting the reasonable inference that the facts alleged support an actionable claim. *Id.* at 556, 127 S. Ct. at 1965; *see also Iqbal*, 129 S. Ct. at 1949. "[F]ormulaic recitation of the elements of a cause of action," supported by mere conclusory statements do not suffice. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. The reviewing court, however, must assume that plaintiff's well-pleaded factual allegations are true and determine whether those allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 129 U.S. at 1950.

The viability of Plaintiff's Complaint turns on a narrow question of law—whether the County's offer of a less favorable severance package constitutes an adverse employment action. Proof of an adverse job action is a central element of a claim under Title VII. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).

In Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss, she maintains that "every federal court which has addressed the issue has found that Title VII, 42 U.S.C. §§ 2000e to 2000e-17, protects against disparate

treatment in the offering of severance pay." (Pl.'s Opp. Def.'s Mot. Dismiss 5, ECF No. 8.) A careful review of the cases cited does not support this position under the facts in the case at hand. In surveying the pertinent legal landscape, it is important to distinguish between cases where severance benefits are a contractual entitlement from those in which an employer offers them as a voluntary benefit. Unquestionably, disparate treatment in the former may constitute an adverse job action, but no reported case appears to support such contention in the latter.

Plaintiff offers the case of *McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir. 2001) as supportive authority for her claims. As a careful examination of the facts in *McGuinness* reveals, plaintiff was entitled by pre-existing agreement to "a layoff package of two weeks severance allowance (one week for each of McGuinness's two years of service)." *Id.* at 52. Plaintiff's allegation in *McGuinness* that she was offered a different and less desirable severance package than was offered her male colleague who was discharged two days later, clearly stated a *prima facie* case under Title VII.

In *Jones v. Reliant Energy-ARKLA*, 336 F.3d 689 (8th Cir. 2003), also cited by Plaintiff, Jones was similarly subject to a corporate reorganization. Allegedly, in contrast to other employees, Jones was offered the option of forced relocation rather than a severance package. The Eighth Circuit Court of Appeals affirmed the trial court's conclusion that the failure to offer Jones a severance package could not constitute an adverse employment action. *Id.* at 692. Relying on *Cooney v. Union Pacific R.R. Co.*, 258 F.3d 731 (8th Cir. 2001), the Court noted that "[w]e have previously declined to find an employer's failure to give severance benefits constitutes an adverse employment

5

action." *Jones*, 336 F.3d at 691–92 (citing *Cooney*, 258 F.3d at 733–34).

Instructively, the Court in *Jones* explained what constitutes an adverse employment action. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard." *Id.* In the immediate case, it is important to keep in mind that the offer of the severance package was made after Plaintiff had been terminated.

In her memorandum, Plaintiff also mentions *EEOC v. Lockheed Martin Corp.*, 444 F. Supp. 2d 414 (D. Md. 2006). In that case, a former employee of Communications Satellite Corporation was denied severance benefits after she had been laid off as a result of the merger of that corporation with Lockheed Martin. Plaintiff had previously filed a charge of discrimination with the EEOC. In the letter informing the discharged employee that her position had been eliminated, it noted that "she would receive severance benefits under the COMSAT Corporation Salary Continuance Plan, but only 'in exchange for' signing a Release of Claims form that was attached to the letter." *Id.* at 416. Clearly, plaintiff was being asked to give up a contractual benefit to pursue her EEOC claim.

In *Lockheed Martin*, the district court held that "Lockheed might well have been free to offer severance benefits to no one, but it cannot provide them only to employees who refrain from participating in protected activity." *Id.* at 419. The district court's reasoning was in part founded on the teachings of *Hishon v. King & Spalding*, 467 U.S.

6

69, 104 S. Ct. 2229 (1984). In *Hishon*, the court noted "[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Id.* at 75, 104 S. Ct. at 2234. Unlike the immediate case, the employee in *Lockheed Martin* was negotiating the terms of her release from employment under a contract providing for severance benefits. Plaintiff here was negotiating a waiver of any cause of action against the County in exchange for severance benefits.

This distinction was placed in clearer focus by the Fourth Circuit in *Britt v. E. I. Du Pont de Nemours & Co.*, 768 F.2d 593 (4th Cir. 1985).

> When an employer gives severance pay or related benefits to employees as part of a plant closing, no relationship exists between the value of the job given up and the value of the benefit. Severance pay in that context is an arbitrarily determined amount that can be thought of as a fringe benefit rather than compensation for not working.

*Id.* at 595.

Also of note is *EEOC v. SunDance Rehab. Corp.*, 466 F.3d 490 (6th Cir. 2006). In *SunDance*, employees brought an action against their employer alleging the separation agreement offered to discharged employees, in exchange for severance pay not otherwise owed, violated Title VII. The Court in *SunDance* concluded that "the employees of Sundance have not been deprived of anything by the offering of the Separation Agreement. Those who choose to accept it are better off, by receiving a benefit that was not 'part and parcel of the employment relationship.'" *Id.* at 501.

Proof of an adverse employment action is pivotal to a viable claim under Title VII for racial or gender discrimination. To survive challenges under Fed. R. Civ. P. 12(b)(6),

a complaint need not allege specific facts establishing a *prima facie* case of discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11, 122 S. Ct. 992, 996–97 (2004). In the Fourth Circuit, however, the holding of *Swierkiewicz* does not "alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim." *Bass v. E. I. Du Pont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing and quoting *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *see also Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006). Plaintiff's inability to offer a factual basis supporting this critical element of her claim is fatal.

Based on the foregoing, the County's Motion to Dismiss will be granted. Consequently, the Court need not reach the County's alternative argument that the Complaint fails to adequately describe the comparators offered in support of the disparate treatment claim.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Feb. 16, 2011
Richmond, VA